Filed 9/19/16  Certified for publication 10/5/16 (order attached)


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D068135 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN336758) |
| STEVEN NACHBAR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michael J. Popkins, Judge.  Affirmed.

Daniel Yeager, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Annie Featherman Fraser, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Steven Nachbar pleaded guilty to one count of unlawful sexual intercourse with a minor more than three years younger (Pen. Code,[1] § 261.5, subd. (c)). The court placed him on formal probation and required him to register as a sex offender. Defendant now challenges four of the conditions to his probation: that he (1) not have photographic equipment; (2) not have toys, video games, or similar items that attract children; (3) obtain approval of his residence from his probation officer; and (4) submit to warrantless and suspicionless searches of his computers and recordable media. We conclude defendant forfeited his challenges to the conditions regarding toys and residence approval because he did not object to them in the trial court. His challenges to the remaining probation conditions lack merit.

Defendant also contends the trial court erred by requiring him to register as a sex offender "for life" because he may someday obtain a certificate of rehabilitation that relieves him of the duty to continue registering. This argument also lacks merit. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2014, when defendant was 22 years old, he was placed on summary probation for having unlawful sexual intercourse with a minor, a 17-year-old girl. While on probation for that offense, defendant met the victim in this case, a 15-year-old girl. They met through a mutual friend, became friends on Facebook, and exchanged text messages. Several of defendant's text messages were sexually explicit and indicated he

---

[1]     All further statutory references are to the Penal Code.

2

wanted to have sex with the victim. Some of the victim's responses were "OMG," "LOL," and that defendant was too old for her.

The victim's parents are divorced and live down the street from each other. On September 14, 2014, the victim told her father she would be staying at her mother's house that night. Her mother was out of town. The victim and defendant arranged to meet at the mother's house, but she told him he could not stay too long because it was a school night. Defendant arrived around 8:00 p.m. and they tried to watch a movie in the victim's bedroom on her cell phone. When they were unable to do so, the victim asked defendant to leave. Defendant said he wanted to cuddle, but the victim asked him to come back another time.

Instead of leaving, defendant grabbed the victim's breasts; she asked him to stop. Defendant moved his hands toward the victim's pants; she attempted to push his hands away. Defendant removed the victim's shirt and fondled her breasts. He reached underneath the victim's pants and underwear and digitally penetrated her vagina several times; she continued to tell defendant to stop. Defendant removed the victim's pants and underwear, got on top of her, and penetrated her vagina with his penis. The victim asked defendant to stop and was eventually able to push him off of her. She asked defendant to leave, and he exited her bedroom. The victim believed defendant had left the house.

The victim put on her clothes and informed a friend by text message that defendant had just raped her. The friend notified the victim's father, who notified law enforcement. When the victim left her bedroom, she saw defendant sleeping on the

3

couch. When sheriff's deputies arrived, they found the victim crying on the driveway and defendant asleep on the couch.

Deputies woke, arrested, and admonished defendant. He initially denied having any sexual contact with the victim, stating he knew it would be wrong because she was only 15 years old. However, during transport, defendant admitted he digitally penetrated the victim's vagina and had sexual intercourse with her. He denied the victim ever told him "no." Defendant said he was " 'coming down' " from having smoked methamphetamine before meeting with the victim.

Defendant was charged in a four-count felony complaint with forcible rape (§ 261, subd. (a)(2)); sexual penetration using force (§ 289, subd. (a)(1)(A)); unlawful sexual intercourse with a minor more than three years younger (§ 261.5, subd. (c)); and penetration by a foreign object (§ 289, subd. (i)). Pursuant to a plea agreement, defendant pleaded guilty to the unlawful sexual intercourse count and the remaining counts were dismissed.

The probation officer's presentencing report assessed defendant as having a moderate to high risk of committing another sexual offense if released on probation, but stated that his chances of success would likely improve if he were "managed on formal probation with intensive monitoring and case planning . . . ."

The trial court sentenced defendant to 381 days in custody (which was set off by custody credits) and placed him on formal probation for three years. As relevant, the conditions of defendant's probation provide that he (1) not have photographic equipment; (2) not have toys, video games, or similar items that attract children; (3) obtain approval

4

of his residence from his probation officer; and (4) submit to warrantless and suspicionless searches of his computers and recordable media.

The court also exercised its discretion to require that defendant register as a sex offender.[2] The court explained that although it understood the Act required that defendant register for life, and that the court thought requiring registration for "10 years or something like that would be appropriate," the court nonetheless required that defendant register because of how quickly he reoffended after his prior offense. Both the order granting formal probation and the judgment state defendant is to "[r]egister per . . . [Penal Code section] 290."

## DISCUSSION

### I. *Probation Conditions*

#### A. *Applicable Legal Principles and Standard of Review*

"Following a defendant's conviction of a crime, the sentencing court may choose among a variety of dispositional options. One option is to release the offender on probation. 'Probation is generally reserved for convicted criminals whose conditional release into society poses minimal risk to public safety and promotes rehabilitation.' [Citation.] A grant of probation is 'qualitatively different from such traditional forms of punishment as fines or imprisonment. Probation is neither "punishment" [citation] nor a

---

2     The Sex Offender Registration Act (§ 290 et seq.; the Act) imposes *mandatory* lifetime registration for offenders convicted of certain enumerated offenses, and allows *discretionary* registration for others (including unlawful sexual intercourse with a minor). (§§ 290, subd. (b), 290.006; *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 874.)

5

criminal "judgment" [citation]. Instead, courts deem probation an act of clemency in lieu of punishment [citation], and its primary purpose is rehabilitative in nature [citation].' " (*People v. Moran* (2016) 1 Cal.5th 398, 402 (*Moran*).) Accordingly, "a grant of probation is an act of grace or clemency, and an offender has no right or privilege to be granted such release." (*Ibid*.) "Stated differently, '[p]robation is not a right, but a privilege.' " (*Ibid*.)

Consequently, a sentencing court may impose conditions to further the rehabilitative and protective purposes of probation. (*Moran, supra*, 1 Cal.5th at pp. 402-403.) Under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), " '[a] condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . ." . . . .' " (*People v. Olguin* (2008) 45 Cal.4th 375, 379, quoting *Lent* at p. 486.) "This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*Olguin*, at p. 379; *Moran*, at p. 403.)

" 'A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as constitutionally overbroad.' [Citation.] 'The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement.' " (*People v. Pirali* (2013) 217 Cal.App.4th 1341, 1346.)

"As a general rule, failure to challenge a probation condition on constitutional or *Lent* grounds in the trial court waives the claim on appeal." (*In re Antonio C.* (2000) 83 Cal.App.4th 1029, 1033; *People v. Welch* (1993) 5 Cal.4th 228, 237 (*Welch*); *In re Sheena K.* (2007) 40 Cal.4th 875, 889.)

We generally review the imposition of probation conditions for an abuse of discretion, and constitutional challenges to probation conditions de novo. (*People v. Appleton* (2016) 245 Cal.App.4th 717, 723 (*Appleton*).)

### B. *Photographic Equipment*

Defendant contends the probation condition prohibiting him from having photographic equipment is unreasonable under *Lent* because he pleaded guilty to unlawful intercourse with a minor, not child pornography. The Attorney General counters that the condition is reasonable under *Lent* because it is reasonably related to future criminality. We agree.

Although defendant was not charged with child pornography, we do not doubt that sexual intercourse with minors bears a strong connection to child pornography. Defendant cites his presentencing psychological evaluation, which concluded he "is not a pedophile or a sexual predator, as he has no reported interests or preferences for pre-pubescent females." However, the issue is not whether defendant is attracted to *prepubescent* females, but rather, his *demonstrated* attraction to *adolescent* females. In this regard, defendant's psychological evaluation concluded "[t]here is no question that

7

[defendant] was likely sexually attracted to the victim, who was an adolescent female."[3] The evaluation also noted defendant "mainly" used Internet pornography during masturbation. These observations, together with defendant's use of social media and sexually explicit text messages when communicating with the victim, show that the photographic equipment probation condition reasonably relates to defendant's future criminality.

In addition, apart from the potential use of photographic equipment in the creation of child pornography, defendant concedes "photography may be a tool in the seduction of minors by predatory adults." While defendant argues he has not yet used this method of seduction, it is not so unrelated to his use of social media and text messaging that would lead us to conclude the trial court abused its discretion in imposing this probation condition.

## C. *Toys*

Defendant argues the probation condition prohibiting him from having " 'toys, video games, or similar items that . . . attract children' " is also unreasonable under *Lent*. He asserts he preserved this issue for review by timely objecting in the trial court. We disagree.

At defendant's sentencing hearing, defense counsel made the following statement regarding the proposed probation conditions set forth in item 10:

---

[3] The evaluation noted defendant "has some emotional difficulties and anxieties regarding interpersonal relationships that place him at a higher risk for engaging in sexual acts with younger persons."

"I just have some questions about the nexus for some of the items under 10. It's 10(o) [toys], (p) [pornography], (q) [computer chat rooms], and (r) [possessing computer/mobile device with Internet access without probation officer approval]. Some of those appear to be appropriate. Some of those do not. [¶] I don't think this had anything to do with a camera or photographing equipment or have him have a mobile phone that has Internet access, things of that nature."

Not only did defense counsel fail to enumerate the condition prohibiting toys as one of those that appeared inappropriate, he acknowledged some of the four conditions he referenced "appear to be appropriate." By failing to set forth his objections to 10(o), defendant deprived the trial court the opportunity "to modify or delete an allegedly unreasonable condition or to explain why it is necessary in the particular case." (*Welch, supra*, 5 Cal.4th at p. 235.) Accordingly, defendant has forfeited the issue on appeal.

D. *Search of Computers and Recordable Media*

Defendant contends the probation condition that requires him to submit his computers and recordable media to suspicionless searches is unconstitutionally overbroad. We disagree.[4]

To support his position, defendant cites the Sixth District Court of Appeal's recent decision in *Appleton, supra*, 245 Cal.App.4th 717. The defendant in that case pleaded guilty to false imprisonment by means of deceit as part of a plea bargain after initially being charged with oral copulation with a minor, whom he had met via a social media smartphone application. (*Id.* at pp. 719-720.) The defendant was placed on probation,

---

4    Although defendant did not object to this probation condition in the trial court, we decline to find a forfeiture because the authority on which he bases the argument did not yet exist.

9

one of the conditions of which provided that the defendant's electronic devices "shall be subject to forensic analysis search for material prohibited by law." (*Id.* at p. 721.) The defendant appealed this condition on *Lent* and constitutional grounds. (*Id.* at pp. 721-722.)

The Court of Appeal found the electronics-search condition did "not run afoul of the first *Lent* factor requiring 'no relationship to the crime' " (*Appleton, supra*, 245 Cal.App.4th at p. 724), but concluded the condition was unconstitutionally overbroad (*id.* at pp. 725-727). The court reasoned the condition "would allow for searches of vast amounts of personal information unrelated to defendant's criminal conduct or his potential future criminality" (*id.* at p. 727), such as his "medical records, financial records, personal diaries, and intimate correspondence with family and friends" (*id.* at p. 725). In reaching this conclusion, the *Appleton* court relied on the Supreme Court's rationale in *Riley v. California* (2014) __ U.S. __[134 S.Ct. 2473] (*Riley*), which held that a warrantless search of a suspect's cell phone incident to arrest implicated and violated his Fourth Amendment rights. (*Riley*, at p. 2493.) The Supreme Court emphasized the wealth of information contained in modern cell phones. (*Id.* at pp. 2489-2490.) The *Appleton* court struck the probation condition and remanded for the trial court to fashion one more narrowly tailored. (*Appleton*, at pp. 728-729.)

More recently, in *In re J.E.* (2016) 1 Cal.App.5th 795, our colleagues in the Court of Appeal for the First District, Division Four, concluded the *Riley* court's privacy concerns in the context of a search incident to arrest are inapposite in the context of determining the constitutional reasonableness of probation conditions allowing searches

10

of electronic devices.  (*In re J.E.*, at pp. 803-804.)  As the *In re J.E.* court explained, unlike the defendant in *Riley* "who at the time of the search had not been convicted of a crime and was still protected by the presumption of innocence," a probationer does not enjoy " ' " 'the absolute liberty to which every citizen is entitled.' " ' "  (*In re J.E.*, at p. 804.)  That is, " 'Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens.' "  (*Ibid.*, quoting *United States v. Knights* (2001) 534 U.S. 112, 119.)  The court recognized that although electronics may be a " 'bottomless pit' " of personal information, "courts have historically allowed . . . probation officers significant access to other types of searches, including home searches, where a large amount of personal information—from medical prescriptions, banking information, and mortgage documents to love letters, photographs, or even a private note on the refrigerator—could presumably be found and read."  (*Id.* at p. 804, fn. 6.)  The court noted the absence of evidence in the record indicating the probationer's electronics contained any of these types of sensitive information.  (*Ibid.*)  The court further noted that the Supreme Court in *Riley* clarified that although cell phone data is subject to Fourth Amendment protection, it is not " 'immune from search.' "  (*In re J.E.*, at p. 804, quoting *Riley, supra*, 134 S.Ct. at p. 2493.)  The *In re J.E.* court thus concluded that although the probationer's right to privacy was *implicated* by the electronics search condition, the right was not *violated* under the circumstances.  (*Id.* at p. 805.)

We find *In re J.E.* persuasive. As a defendant who has pleaded guilty to a felony and accepted probation in lieu of additional punishment, defendant has a diminished expectation of privacy as compared to law-abiding citizens or those subject to searches incident to arrest. Thus, we conclude the privacy concerns voiced in *Riley* are inapposite in the context of evaluating the reasonableness of a probation condition.

We further conclude the probation condition is suitably tailored in light of the substantial protective and rehabilitative concerns demonstrated by the record. The condition is related to defendant's crime because he communicated with his victim via social media, sent her sexually explicit text messages, and intended to watch a movie with her on a mobile device on the date of the offense.[5] Defendant reoffended with a younger victim within a matter of mere months, while already on probation. His psychological evaluation revealed he is sexually attracted to adolescents and "has some emotional difficulties and anxieties regarding interpersonal relationships that place him at a higher risk for engaging in sexual acts with younger persons." And the probation officer reported defendant had a moderate to high risk of reoffending if released on probation, and his chances of success would likely improve if he were "intensive[ly] monitor[ed]." Under these circumstances, we conclude the probation condition allowing searches of defendant's computers and recordable media is reasonable.

---

5       The issue of whether an electronics search probation condition may be imposed upon a juvenile when that condition has *no relationship* to the crimes committed is currently pending before our Supreme Court. (See *In re Ricardo P.* (2015) 241 Cal.App.4th 676, review granted Feb. 17, 2016, S230923.)

12

E.  *Residence Approval*

Defendant contends the probation condition that requires him to obtain his probation officer's approval of his residence (item 10(g)) violates his constitutional rights to travel and freedom of association.[6]  The Attorney General argues defendant forfeited this challenge by failing to raise it below.  We agree.  Defendant concedes he did not raise the issue below, but urges us to consider the issue as a pure question of constitutional law.  (See *In re Sheena K.*, *supra*, 40 Cal.4th at p. 887 ["An obvious legal error at sentencing that is 'correctable without referring to factual findings in the record or remanding for further findings' is not subject to forfeiture."].)  Defendant concedes in his reply brief that this challenge "cannot be assessed without at least a glance at the record, given that the condition is not necessarily overbroad in the abstract."  Accordingly, we find the challenge forfeited.

II.  *Sex Offender Registration*

Defendant contends the trial court erred by requiring that he register as a sex offender "for life," arguing that he may ultimately be able to set aside his plea and obtain a certificate of rehabilitation after 10 years, which would relieve him of the duty to continue registering.  (See *People v. Ansell* (2001) 25 Cal.4th 868, 877, fn. 17; § 290.5, subd. (a).)  Accordingly, he argues, "the trial court's pronouncement should have been

---

[6]    At times in his opening brief, defendant erroneously refers to a different probation condition that requires him to *report* any change of address to his probation officer within 72 hours (item 6(j)).  Based on the authorities defendant cites in his opening brief and the clarification he provides in his reply brief, we understand defendant's challenge on appeal is directed at the residence-*approval* condition (item 10(g)), not the *reporting* condition (item 6(j)).

13

limited to stating that he would be required to register *pursuant to the Act. . . .*"  We find no error.

"By its terms, section 290 imposes a registration requirement on the individual 'for the rest of his or her life.' "  (*People v. King* (2007) 151 Cal.App.4th 1304, 1308, quoting former § 270, subd. (a)(1)(A); see   § 290, subd. (b).)  Thus, although defendant may someday avail himself of a mechanism that will relieve him of the duty to continue registering, that does not render the sentence unauthorized.

DISPOSITION

The judgment is affirmed.

HALLER, J.

WE CONCUR:

HUFFMAN, Acting P. J.

NARES, J.

14

Filed 10/5/16

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068135 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN336758) |
| STEVEN NACHBAR, | ORDER GRANTING PARTIAL PUBLICATION |
| Defendant and Appellant. | |

THE COURT:

The opinion filed September 19, 2016 is ordered certified for partial publication with the exception of parts I. B., I. C., I. E., and II.

HUFFMAN, Acting P. J.

Copies to: All parties